**ARTHUR J. GALLAGHER & CO., Appellant,**

v.

**Tracy L. DIETERICH, Appellee.**

**No. 05-07-00239-CV.**

Court of Appeals of Texas, Dallas.

Oct. 27, 2008.

Rehearing Overruled Dec. 16, 2008.

---

Deanne C. Ayers and Julie B. Tebbets, Ayers & Ayers, Colleyville, for Appellant.

D. Todd Smith, Austin, for Appellee.

Before Justices MOSELEY, BRIDGES, and LANG–MIERS.

### OPINION ON REHEARING

Opinion by Justice LANG–MIERS.

We deny appellant's motion for rehearing. On our own motion, we withdraw our opinion of July 29, 2008, and vacate our judgment of that date. This is now the opinion of the court.

This is a breach of contract case filed by a former employee, Tracy L. Dieterich, against his former employer, Arthur J. Gallagher & Co. (the Company). The Company appeals the trial court's judgment following a jury trial in which the jury found that the Company breached its contract with Dieterich and awarded him back pay, vacation pay, automobile reimbursement, interest, attorney fees, and costs. We affirm.

### FACTUAL & PROCEDURAL BACKGROUND

The Company is in the business of brokering insurance and benefit plans to employers. It hired Dieterich as a producer, or broker, in October 2001. The Company and Dieterich signed an Executive Agreement (the Agreement) in which the Company agreed to employ Dieterich for an initial term of six months. The Agreement provided for automatic six-month renewals unless either party gave notice within thirty days of the end of the six-month term that it wished to terminate the employment relationship at the end of the six-

month term.[1] In November 2002, the Company notified Dieterich that it intended to terminate the Agreement at the end of the six-month term.[2] After it sent that notice, it also reduced Dieterich's salary. Dieterich complained about the salary reduction, but continued to work at the Company until the end of the six-month term.

Dieterich sued the Company for breach of contract, contending that the Agreement prohibited the Company from reducing his salary during the notice period, and sought damages for back pay, vacation pay, and automobile reimbursement.[3] The Company contended that the Agreement specifically allowed it to modify Dieterich's entitlements at any time, but, even if it did not, Dieterich agreed to modify the Agreement by continuing to work at the reduced salary. The trial court submitted the issue to the jury, which found in favor of Dieterich. The jury awarded Dieterich $14,581 in back pay, $3,125 in vacation pay, and $447 in automobile reimbursement. It also awarded him attorney fees in the amounts of $20,273 for trial, $4,500 for an appeal to the court of appeals, and $3,650 for an appeal to the Texas Supreme Court. The trial court rendered final judgment in accordance with the jury verdict.

The Company raises eleven issues on appeal, primarily arguing that the trial court erred by submitting the matter to the jury because the Agreement allowed it to reduce Dieterich's salary; it proved that the Agreement was modified as a matter of law; the evidence is legally and factually insufficient to support the jury's findings; the evidence is legally and factually insufficient to support the damages award; the trial court erred by (a) awarding attorney fees; (b) awarding pre-and post-judgment interest and court costs; and (c) allowing the attorney fees expert to refresh his recollection with a document excluded from evidence; Dieterich made improper and incurable jury arguments; and the reporter's and clerk's records are incomplete and inaccurate.

### RECORD ON APPEAL

We address the Company's eleventh issue first. It complains that the trial court did not provide a complete record of the trial proceedings because several pleadings were requested but not included in the record on appeal. This argument is moot because we ordered the district clerk to file a supplemental record containing those pleadings and the record is now complete.

The Company also argues that the record is inaccurate. It contends that the court reporter improperly attached a complete copy of a transcript of a video deposition, part of which was played to the jury, instead of transcribing only the portions of the deposition actually introduced. However, when the Company offered the video deposition into evidence, counsel for the Company "waive[d] the reporting of the deposition testimony" and marked a copy of the entire deposition for record purposes only. As a result, this issue presents nothing for our review. Tex.R.App. P. 33.1(a).

We resolve appellant's eleventh issue against it.

---

1. The Company also reserved the right to terminate Dieterich's employment prior to the end of any six-month term for cause. That provision is not an issue in this appeal.

2. The Company initially stated the termination would be effective thirty days from the notice, or December 2002. However, pursuant to their Agreement, the Company did not terminate Dieterich's employment until the end of the six-month term.

3. Dieterich also alleged other causes of action, all of which were nonsuited and are not before us.

## BREACH OF CONTRACT

On original submission, both parties argued that the Agreement unambiguously supports their respective positions. In subparts of its first and second issues and in its third and fourth issues, the Company argued that the evidence was legally and factually insufficient to support the jury's answers to questions one and two because the plain language of paragraph two of the Agreement allowed it to reduce Dieterich's salary at any time, even during the notice period:

> The Company agrees that the Executive shall be entitled to the semi-monthly payment of compensation.... It is understood and agreed that the Company may from time to time modify the specific terms and conditions of these entitlements.

It contended that the trial court erred by submitting questions one and two [4] to the jury because the trial court should have interpreted the Agreement as a matter of law. Conversely, Dieterich contended that paragraph seven of the Agreement prohibits the Company from changing his compensation during the notice period:

> The Company agrees to continue in effect during the Notice Period the compensation and benefits to which the Executive may be entitled under Paragraph Two of this Agreement.

In additional subparts of its first and second issues and in its fifth issue, the Company also argued that, as a matter of law, the parties agreed to modify the Agreement when Dieterich continued to work at the reduced salary, and the trial court erred by submitting question three to the jury.[5]

Consequently, both parties argued that their interpretations of the contract language were correct as a matter of law. And we could not properly consider the Company's position that it could modify Dieterich's salary at any time without first construing the Agreement to determine whether the Company's interpretation was correct as a matter of law. However, in its motion for rehearing, the Company now expressly states:

> Appellant has never taken the position that the contract is unambiguous. The issue raised on appeal was not that the Executive Agreement was unambiguous, as stated in the Court's decision, but rather that the Appellee accepted the modification in his agreement by continuing to work at the reduced salary through the end of his employment.... Appellant is not asking the court to interpret the Employment Agreement....

---

4. The relevant portions of the jury charge provided:

 QUESTION NO. 1:
 > Did Tracy L. Dieterich and Arthur J. Gallagher & Company (Gallagher) agree that the compensation or salary paid by Gallagher to Tracy L. Dieterich would not be reduced during the "Notice Period" in Paragraph 6 of the Executive Agreement between Tracy L. Dieterich and Gallagher?
 > In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

 ANSWER: <u>Yes</u>
 QUESTION NO. 2:
 > Did Gallagher fail to comply with the agreement?
 > ANSWER: <u>Yes</u>

5. Question three of the jury charge asked:

 QUESTION NO. 3:
 > Was Gallagher's failure to comply excused?
 > INSTRUCTIONS:
 > ....
 > Failure to comply with one agreement is excused if the parties agreed that a new agreement would take its place.
 > ANSWER: <u>No</u>

Appellant's point at the trial court and on appeal was that the Appellant is not liable as a matter of law based on the Appellee's acceptance of the modification of the contract.[6]

Because the Company has now expressly stated it is not asking us to construe the Agreement, we will not consider whether the Agreement allowed the Company to reduce Dieterich's salary during the notice period, as a matter of law, or whether the Company breached the agreement by doing so. *See Thomas v. Wheeler*, No. 06–07–00117–CV, 2008 WL 2884933, at *3 (Tex.App.-Texarkana July 29, 2008, no pet.) (mem.op.) ("When a party tells a court that the party does not make argu-

ment X, but instead is arguing Y, that utterance waives argument X.") (citing *Cont'l Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 402 (Tex. 2000)). Instead, we consider the Company's argument that question three should not have been submitted to the jury because the Agreement was modified as a matter of law when Dieterich continued to work at the reduced salary.

## A. Contract modification

 Contract modification is an affirmative defense. *See Intec Sys., Inc. v. Lowrey*, 230 S.W.3d 913, 918 (Tex.App.-Dallas 2007, no pet.); *Barrand, Inc. v. Whataburger, Inc.*, 214 S.W.3d 122, 145 (Tex.App.-Corpus Christi 2006, pet. de-

---

6. The Company argued on original submission:

> The trial court erred in submitting this matter to the jury in that the issue to be determined is a question of law. Specifically, the jury was asked to determine 1) whether [the Company] and [Dieterich] agreed not to reduce [Dieterich]'s salary; 2) whether [the Company] failed to comply with the Executive Agreement; and 3) whether [the Company]'s failure to comply, if any, was excused. Each of these issues are [sic] questions of law. Accordingly, the issues should never have been submitted to the jury. The trial court's failure to rule as a matter of law was arbitrary and capricious in that the court acted without reference to Texas caselaw and guiding precedent.

After citing the law regarding contract construction, the Company's argument continued:

> The contract at issue contains a clause in Paragraph 2 which gives [the Company] the right to modify salary.... Because the plain language of the contract at issue permits [the Company] to modify salary-up or down-at its own discretion, as a matter of law [the Company] could reduce [Dieterich]'s salary during the Notice Period. Thus, it was improper to submit Question 1 to the jury. Likewise, because the plain language of the contract permits [the Company] to modify salary as its own discretion,

[the Company] did not fail to comply with the agreement. Thus, it was also improper to submit Question 2 to the jury.

....

> Appellant would also show that the plain language of the contract mandates a finding that [the Company] was entitled to reduce [Dieterich]'s salary.... Likewise, the Trial Court Judge abused his discretion in entering judgment finding that the parties agreed not to reduce [Dieterich]'s salary and in finding that [the Company] breached the employment agreement. The plain language of the employment agreement provides, ... "It is understood and agreed that the company may from time to time modify the specific terms and conditions of these entitlements." ... The contract language specifically permits [the Company] to make adjustments to [Dieterich]'s salary. Nothing in the contract precludes a downward adjustment of salary. In applying the Rules of Construction to this employment contract, the Court must use plain language when construing the contract....

....

> Longstanding Texas caselaw provides that the Trial Court Judge-not a jury-is charged with construing a contract as a matter of law.... Thus, the jury was effectively asked to give a legal interpretation of a contract.... [T]he Court should have refused to submit the matter to a jury for determination, and should have made the contract interpretation as a matter of law.

nied). Whether a contract is modified depends on the parties' intentions and is a question of fact. *Red Roof Inns, Inc. v. Murat Holdings, L.L.C.*, 223 S.W.3d 676, 682 (Tex.App.-Dallas 2007, pet. denied); *Williams v. Colthurst*, 253 S.W.3d 353, 359 (Tex.App.–Eastland 2008, no pet.). The burden of proving modification rests on the party asserting the modification. *Colthurst*, 253 S.W.3d at 359. A contract modification must satisfy the traditional requirements of a contract—there must be a meeting of the minds supported by consideration. *Barrand*, 214 S.W.3d at 145; *Boondoggles Corp. v. Yancey*, No. 01–05–00185–CV, 2006 WL 2192708, at *6 (Tex. App.-Houston 2006, no pet.) (mem.op.). In determining whether the parties had a meeting of the minds concerning a modification of a contract, the focus is on what the parties did and said, not their subjective states of mind. *Komet v. Graves*, 40 S.W.3d 596, 601 (Tex.App.-San Antonio 2001, no pet.).

■ Consideration is a bargained-for present exchange in return for a promise. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex.1991); *Cherokee Commc'ns, Inc. v. Skinny's, Inc.*, 893 S.W.2d 313, 316 (Tex.App.-Eastland 1994, writ denied). It may consist of a benefit that accrues to one party or a detriment incurred by the other party. *See Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 315 (Tex.App.-Houston (14th Dist.) 2003, pet. denied) (citing *Roark*, 813 S.W.2d at 496). When a party agrees to do no more than that which he is already bound to do under an existing contract, the consideration is not sufficient to support a modification. *See Boondoggles*, 2006 WL 2192708, at *6 (to be effective, modification

must be supported by additional consideration).

## B. Was the Agreement modified as a matter of law?

■ The Company cites several cases to support its argument that the Agreement was modified as a matter of law. *See, e.g., In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778 (Tex.2006) (per curiam); *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161 (Tex.2006) (per curiam); *In re Halliburton Co.*, 80 S.W.3d 566 (Tex.2002); *City of Odessa v. Barton*, 967 S.W.2d 834 (Tex. 1998); *Hathaway v. Gen. Mills, Inc.*, 711 S.W.2d 227 (Tex.1986). However, those cases involved at-will employment relationships where the parties did not have an agreement that limited either the employer's or the employee's right to terminate the employment relationship at their will. *See Goodyear Tire & Rubber Co. v. Portilla*, 879 S.W.2d 47, 54 (Tex.1994).

The Company also cites *L.G. Balfour Co. v. Brown*, 110 S.W.2d 104 (Tex.Civ. App.-Fort Worth 1937, no writ) and *Apple Chevrolet–Oldsmobile, Inc. v. Hatthorn*, No. 01–88–00702–CV, 1989 WL 31991 (Tex.App.-Houston [1st Dist.] Apr. 6, 1989, no writ) (not designated for publication). Although *Balfour* does not state whether it involves an at-will employment situation, other cases that have cited *Balfour* construe it as such. *See, e.g., Hathaway*, 711 S.W.2d at 229; *Mitsubishi Aircraft Int'l, Inc. v. Maurer*, 675 S.W.2d 286, 288 (Tex. App.-Dallas 1984, no writ); *Geodominion Petroleum, Inc. v. Boone Exploration, Inc.*, No. 13–06–00430–CV, 2008 WL 3521966, at *2 (Tex.App.-Corpus Christi Aug. 14, 2008, no pet. h.) (mem.op.).

But this situation is different because Dieterich was not an at-will employee.[7] In

---

**7.** Paragraph one of the Agreement provided that the Company "agrees to employ and to continue to employ the Executive in accor-

dance with the terms of this Agreement." The Company states that Dieterich "essentially reverts to an at-will employment relation-

this case, the parties had a contract, and, as we have noted, whether the Company and Dieterich modified their Agreement depends on their intent. *Red Roof Inns, Inc.,* 223 S.W.3d at 682. And intent is a question of fact, not of law. *Id.; see Enserch Corp. v. Rebich,* 925 S.W.2d 75, 83–84 (Tex.App.-Tyler 1996, writ dism'd by agr.). Consequently, the Company did not prove that the Agreement was modified as a matter of law when Dieterich continued to work at the reduced salary, and the trial court properly submitted the fact issue to the jury.

**C. Is the evidence sufficient to support the jury's finding that the parties did not agree to modify the Agreement?**

■ In answering question three, the jury found that the Company's failure to comply with the Agreement was not excused because the parties did not agree that a new agreement would take the place of the original Agreement. In subparts of its first and second issues and in its fifth issue, the Company contends that the evidence is legally and factually insufficient to support the jury's answer.

■ When we review a finding for legal sufficiency, we view the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. *Lee Lewis Constr., Inc. v. Harrison,* 70 S.W.3d 778, 782 (Tex.2001); *Joplin v. Borusheski,* 244 S.W.3d 607, 610 (Tex.App.-Dallas 2008,

no pet.). We must credit the favorable evidence if reasonable jurors could and disregard the contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005); *Joplin,* 244 S.W.3d at 610. When reviewing a finding for factual sufficiency, we consider all of the evidence and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986) (per curiam); *Joplin,* 244 S.W.3d at 610. A matter is conclusively established by the evidence only if reasonable people could not differ in their conclusions. *City of Keller,* 168 S.W.3d at 816.

The evidence at trial showed that Dieterich was contacted by a recruiter for the Company to see whether he had an interest in working for the Company to help expand its Dallas office. He met with the Company's executive vice president and Dallas branch manager. In a letter, the Company offered Dieterich a producer position earning $150,000 annual base salary plus a guaranteed bonus to bring the salary to $180,000, the salary Dieterich stated he would need to accept the job. Dieterich accepted the offer, signed the Agreement, and began to work for the Company in October 2001.[8]

In November 2002, the Company notified Dieterich that it intended to terminate the Agreement at the end of the six-month term. This triggered the "notice period" under the Agreement.[9] Dieterich testified

ship" during the notice period. But this argument was raised for the first time in its reply brief, and the Company does not cite any provision of the Agreement or authority to support this argument.

8. The Agreement did not establish Dieterich's compensation rate; that was stated in a separate document.

9. The relevant portion of the Agreement stated:

 **Paragraph Six.** Company agrees to employ Executive for a term of six(6) months from the date of the execution of this Agreement. At the end of the initial six month term and any subsequent six month term, the Executive's employment with the [C]ompany shall be automatically renewed for a term of six months unless either party, not less than

that he understood that the Agreement allowed the Company to change his entitlements "from time to time,"[10] but that it did not allow the Company to change his compensation after the notice period began. He based this understanding on paragraph seven of the Agreement, which stated that the entitlements would "continue in effect" during the notice period.[11] Dieterich also testified that his salary remained at $180,000 until two months into the notice period.

When Dieterich received his deposit advice on his January 31, 2003 paycheck, he learned for the first time that the Company had reduced his salary by more than one-third retroactive to January 1, 2003. He sent a memo to Jerry Guy, the new Dallas Branch Manager for the Company, inquiring about the "mistake" and advised Guy that the Agreement did not permit the Company to change his base salary during the notice period. When Guy did not respond, Dieterich sent another inqui-ry. In February 2003, Dieterich met with Guy, who told him that the salary reduction was a management decision. Dieterich remained at the Company through the notice period and assisted in the transition as required by the Agreement.[12]

Guy testified that he interpreted the Agreement to allow the Company to modify Dieterich's salary at any time, including during the notice period. He said the Company modified Dieterich's salary as allowed under paragraph two of the Agreement and continued to pay him at the reduced salary during the notice period. Both Guy and Brewer testified that the Agreement did not limit the amount by which the Company could reduce Dieterich's salary during the notice period as long as the salary, whatever its amount, "continue[d] in effect" during the notice period.

We conclude that this evidence is legally and factually sufficient to support a finding that the Company and Dieterich did not

---

thirty (30) days prior to the end of any six month term (the "Notice Period"), notifies the other party that the notifying party wishes to terminate employment at the end of the six month term....

10. Paragraph two of the Agreement stated:
**Paragraph Two.** The Company agrees that the Executive shall be entitled to the semimonthly payment of compensation and, to the extent provided for in accordance with Company policy, the following: an annual paid vacation, and various employee benefit plans. It is understood and agreed that the Company may from time to time modify the specific terms and conditions of these entitlements....

11. Paragraph seven of the Agreement stated:
**Paragraph Seven.** The Company agrees to continue in effect during the Notice Period the compensation and benefits to which the Executive may be entitled under Paragraph Two of this Agreement. It is understood and agreed that at the expiration of the Notice Period, the Executive's entitlement to such remuneration shall cease.

12. The relevant portion of the Agreement stated:

**Paragraph Eight.** The Executive agrees that during the Notice Period, he will cooperate fully with the Company in all matters relating to the winding up of any pending work and the orderly transfer to other Company employees of the accounts for which he has most recently been responsible. The Executive further agrees that, during the Notice Period (whether or not active employment continues during the Notice Period), Executive's fiduciary duty to Company shall remain in effect ... The Executive further understands and agrees that, during or at the expiration of the Notice Period, he will attend any meeting the Company may convene to: (i) review the status of accounts for which the Executive has most recently been responsible; (ii) ensure that the Executive has fully obtained his entitlements under this Agreement; and/or (iii) confirm that the Executive clearly understands the nature and scope of his post-employment obligations.

reach a meeting of the minds concerning the reduction in salary and that the Company did not offer Dieterich new consideration in exchange for a reduced salary. *See Boondoggles,* 2006 WL 2192708, at *6. As a result, the evidence is legally and factually sufficient to support the jury's answer to question three.

We resolve issues one, two, three, four, and five against appellant.

## DAMAGES

■ In its sixth issue, the Company argues that the evidence is factually insufficient to support the jury's award of damages for vacation pay and automobile reimbursement.

Dieterich testified that he did not take vacation in 2003 and that the Company owed him for one-half of a two-week vacation, or five days, based on his base salary of $150,000. He estimated that amount to be approximately $3,125. On cross-examination, the Company's branch manager calculated Dieterich's weekly salary based on an annual income of $150,000 and arrived at $2,885. The jury returned a verdict of $3,125 in damages for vacation pay.

On appeal, the Company contends that Dieterich was actually paid through the entire month of April 2003, instead of through April 16, 2003, the end of the six-month term, and, as a result, has already been compensated for his vacation pay because he was overpaid by $4,788. But these calculations were based on a $100,000 annual salary, the amount of the salary after the reduction, not a $150,000 annual salary. We conclude, therefore, that the jury's finding on vacation pay is not so against the overwhelming weight of the evidence as to be clearly wrong and unjust.

The Company also contends that the evidence is factually insufficient to support the jury's award of $447 in damages for automobile reimbursement. We disagree. Dieterich testified that the Company owed him $447.19 for automobile reimbursement, and the Company did not offer any evidence to dispute this amount. We conclude, therefore, that the jury's finding is not so against the overwhelming weight of the evidence as to be clearly wrong and unjust.

We resolve appellant's sixth issue against it.

## ATTORNEY'S FEES

We next address the Company's seventh and tenth issues. In two subparts of its seventh issue, it argues that the trial court improperly submitted the issue of attorney's fees to the jury because Dieterich did not segregate his attorney's fees, and the evidence is legally and factually insufficient to support the award. In its tenth issue, it argues that the attorney fee award must be reversed because Dieterich's expert was allowed to refresh his memory with a document that had not been provided in discovery.

### A. Segregation of Fees

■ In the proper case, a failure to segregate attorney's fees may result in the recovery of zero attorney's fees. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 389 (Tex.1997). However, a failure to object to the fact that the attorney's fees are not segregated as to specific claims waives the objection on appeal. *Id.; Lamajak, Inc. v. Frazin,* 230 S.W.3d 786, 797 (Tex.App.-Dallas 2007, no pet.). In this case, the Company did not object to the charge as submitted.[13] Having failed to object to the

13. We also note that the Company submitted a proposed jury instruction on attorney's fees which did not ask the jury to segregate the fees.

charge, the Company cannot complain about the failure to segregate attorney's fees. *Solis*, 951 S.W.2d at 389; *Lamajak, Inc.*, 230 S.W.3d at 797.

## B. Legal and Factual Sufficiency of the Evidence

 The Company also argues that the evidence is legally and factually insufficient to support the award of attorney's fees because Dieterich's attorney, Robert Jenkins, did not offer any evidence of the *Andersen*[14] factors. It also contends that Jenkins's testimony about the fees charged by Dieterich's prior attorney is "simply a bald conclusion without any factual basis" because Jenkins did not have personal knowledge about the former attorney's experience, ethics, morality, truthfulness, or billing habits.

 Initially, we note that evidence of each of the *Andersen* factors is not required to support an award of attorney's fees. *Lamajak, Inc.*, 230 S.W.3d at 797. Additionally, Jenkins testified, without objection, as an expert witness on attorney's fees. An expert is not required to have personal knowledge of the matters about which he testifies. *See* TEX. Rs. EVID. 602, 703. An expert on attorney's fees may testify that he reviewed an attorney's file and offer an opinion that the fees charged for that work were reasonable and necessary. *See Brazos Elec. Power Co-op., Inc. v. Weber*, 238 S.W.3d 582, 584 (Tex.App.-Dallas 2007, no pet.).

Here, Jenkins testified that he reviewed the former attorney's file, his level of experience, the type of work he did on the case, the number of hours he worked, and his billing rate. He opined that the former attorney's fees were reasonable and necessary. Jenkins also testified about his own representation of Dieterich. He testified about his level of experience, his fee arrangement with Dieterich, and the type of work he did on the case. Jenkins testified that, although the case seemed relatively simple at first, it involved numerous continuances, discovery, and multiple attempts at summary judgment over a three-year period. He testified that their combined fees of $17,873.77 up until the time of trial were reasonable and necessary for the work done on the case. Jenkins also estimated trial fees at $1,200 per day based on an eight-hour day. We also note that the trial lasted at least two days. We conclude that this testimony is sufficient to support the jury's award of attorney's fees.[15]

We resolve appellant's seventh issue against it.

## C. Document Used to Refresh Recollection

 At a pretrial hearing, the Company objected when Dieterich offered as evidence any document about attorney's fees that had not been produced during discovery. The trial court ruled that if such a document had not been produced, it would be excluded. At trial, Jenkins was asked

---

**14.** *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex.1997) (factors to be considered in determining an award of attorney's fees are (1) time and labor involved, novelty and difficulty of questions involved, and skill required; (2) likelihood that lawyer will be precluded from accepting other employment; (3) fee customarily charged for similar services; (4) amount involved and results obtained; (5) time limita-

tions imposed by client or circumstances; (6) nature and length of professional relationship with client; (7) experience, reputation, and abilities of lawyers performing services; and (8) whether fee is fixed or contingent).

**15.** The Company does not challenge the award of attorney's fees for an appeal to the court of appeals or the Texas Supreme Court.

to calculate the total attorney's fees incurred on Dieterich's behalf in this case by multiplying the number of hours each attorney billed by that attorney's billing rate. Jenkins did not have a calculator and was not able to testify about the total fees without referring to a summary he had prepared. He used the summary to refresh his recollection about the total amount of attorney's fees. *See* TEX.R. EVID. 612. The Company objected to this use of the document because it had not been produced in discovery, but the trial court overruled the objection and allowed Jenkins to refresh his recollection using the document.

We note that Jenkins did not testify about any matters contained in the document other than the actual calculation of the total fees. We cannot conclude that the trial court erred by allowing this use of the document. But, even if it was error, the Company has not shown how the error resulted in the rendition of an improper verdict because the jury could have used Jenkins's testimony about the number of hours worked and the billing rate to make its own calculation.

We resolve appellant's tenth issue against it.

### INCURABLE JURY ARGUMENT

We next address the Company's ninth issue, in which it contends it is entitled to a new trial because, during closing argument, Dieterich asked the jurors to place themselves in his shoes. The Company complains about the following closing arguments:

Ask yourself, if you're making $150,000 a year and you are reduced to $100,000 a year, does your salary continue in effect or was it changed?

Well, ask yourself, if you're an employee and you have an employment agreement, and that agreement says you are going to have this salary because of the offer letter you have a salary of $150 [sic] a year, and they reserve the right to reduce that at any time to any amount, what's that contract worth to you as an employee. What protections does this contract provide?

Although the Company did not object to these arguments at the time they were made, it raised the issue in its motion for new trial. This was sufficient to preserve the issue for our review. *See Taylor v. Am. Fabritech, Inc.,* 132 S.W.3d 613, 624 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). It also complains about the following jury argument:

[T]ake your common sense, read the documents, the Executive Agreement and the offer letter, and you decide what "continue in effect" means to you. And if this contract was presented to you under the circumstances it was presented to Mr. Dieterich.... And you decide what that contract means and whether it was breached or not.

The Company objected to this argument, and the trial court sustained the objection. However, the Company did not request a curative instruction. It argues on appeal that all of these arguments were so prejudicial that no instruction from the trial court could undo the damage they had already caused. In other words, it contends that these jury arguments were incurable. *See Otis Elevator v. Wood,* 436 S.W.2d 324, 333 (Tex.1968).

Incurable jury argument is rare. *See Living Ctrs. of Tex. v. Penalver,* 256 S.W.3d 678, 681 (Tex.2008) (per curiam). The complaining party "must show that the argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects." *Id.* at 680–81. The test is whether

the argument "was reasonably calculated to cause such prejudice to the opposing litigant that a withdrawal by counsel or an instruction by the court, or both, could not eliminate the probability that it resulted in an improper verdict." *Id.* at 681. Incurable jury argument has been found in arguments that appeal to prejudice; make unsupported, extreme, and personal attacks on opposing parties and witnesses; and accuse the opposing party of manipulating a witness without evidence of witness tampering. *Id.* (citing *Std. Fire Ins. v. Reese,* 584 S.W.2d 835, 840 (Tex.1979)). The complaining party must explain on appeal why opposing counsel's argument was incurable based on an evaluation of the whole case, from voir dire to closing argument. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001); *Luna v. N. Star Dodge Sales, Inc.,* 667 S.W.2d 115, 120 (Tex.1984); *World Wide Tire Co. v. Brown,* 644 S.W.2d 144, 146–47 (Tex.App.-Houston [14th Dist.] 1982, writ ref'd n.r.e.).

The Company correctly argues that appeals to the jury to place themselves in the shoes of a litigant generally are improper. *See Bookhout v. McGeorge,* 65 S.W.2d 512, 520 (Tex.Civ.App.-Dallas 1933, writ dism'd). However, the Company does not explain why the arguments were incurable based on an evaluation of the whole case. And after examining the entire record, we cannot say that the error was so harmful that its effect could not have been removed by a proper curative instruction. *See Fambrough v. Wagley,* 140 Tex. 577, 585, 169 S.W.2d 478, 482 (1943).

We resolve appellant's ninth issue against it.

Based on our disposition of issues one through seven, nine, and ten, we do not need to reach issue eight concerning prejudgment and postjudgment interest and costs.

## CONCLUSION

We affirm the trial court's judgment.