**WASHINGTON MUTUAL BANK,
Appellant and Cross–
Appellee,**

v.

**HOUSTON WINDCREST WEST
ROAD I, L.P., Appellee and
Cross–Appellant.**

No. 05–07–01261–CV.

Court of Appeals of Texas,
Dallas.

Aug. 25, 2008.

Rehearing Overruled Sept. 29, 2008.

Debora McWilliams Alsup, Thompson & Knight LLP, Austin, Cheryl E. Diaz, Richard B. Phillips, Jr., Thompson & Knight L.L.P., Dallas, for appellant.

Brian J. Brandstetter, The Wentwood Companies, Fort Worth, for appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion by Justice WHITTINGTON.

The trial judge rendered judgment for Houston Windcrest Road I, L.P., after a jury trial. In two issues, Washington Mutual Bank contends there was no evidence or insufficient evidence to support the jury's finding that Houston Windcrest justifiably relied on a negligent misrepresentation by Washington Mutual and no evidence or insufficient evidence to support the damages awarded in the judgment. In one cross-issue, Houston Windcrest alleges the trial judge erred in partially granting Washington Mutual's motion for judgment notwithstanding the verdict and reducing the amount of damages found by the jury. Because we agree there was insufficient evidence to support the jury's award of damages or the amount of damages included in the final judgment, we reverse the trial court's judgment and render judgment in favor of Washington Mutual.

### Background

Houston Windcrest provides low-income housing at below-market rental rates and obtains income tax credits for its investors. In 1995, Houston Windcrest borrowed $5,850,000 from a bank that was later acquired by Washington Mutual. In 2004 and 2005, Houston Windcrest sought to refinance the loan. Houston Windcrest

obtained a payoff statement dated February 4, 2004, from Washington Mutual that did not include a penalty for prepaying the loan. On a payoff statement dated August 10, 2005, however, a prepayment penalty of $622,799.37 was included. Houston Windcrest sued Washington Mutual for negligently misrepresenting the amount required to pay off the loan, or negligently misrepresenting it had waived the prepayment penalty provided for in the note. Houston Windcrest alleged it relied on the original payoff statement to its detriment by making payments in preparation for refinancing the property.

The jury found in favor of Houston Windcrest and included a damages award of $2,561,927.78. After granting in part Washington Mutual's motion for judgment notwithstanding the verdict and Houston Windcrest's motion for judgment, the trial judge rendered judgment for Houston Windcrest in the amount of $1,735,771.78.

### Standard of Review

In evaluating the legal sufficiency of the evidence to support a finding, we must determine whether the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). We sustain a no-evidence point only if there is no more than a scintilla of evidence proving the elements of the claim. *St. Joseph Hosp. v. Wolff,* 94 S.W.3d 513, 520 (Tex.2002). In making this determination, we must view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller,* 168 S.W.3d at 807.

### Discussion

Because the parties' issues relating to the damages awarded by the jury and the trial judge are dispositive, we address those issues first. In determining the amount of damages that were proximately caused by the bank's negligent misrepresentation, the jury was instructed to consider only "the economic loss, if any, otherwise suffered in the past as a consequence of Houston Windcrest West Road I, L.P.'s reliance on the misrepresentation." Washington Mutual contends the instruction was correct, but there was no evidence to support the jury's answer.

■ As noted by the court in *Federal Land Bank Association of Tyler v. Sloane,* 825 S.W.2d 439, 442 (Tex.1991), in determining damages for negligent misrepresentation, we apply the test found in the Restatement (Second) of Torts, section 552B:

> (1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including
>
> > (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
> >
> > (b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.
>
> (2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

RESTATEMENT (SECOND) OF TORTS § 552B (1977). Consistent with this test, the jury was asked about the "economic loss" that was suffered by Houston Windcrest as a consequence of its reliance on Washington Mutual's negligent misrepresentation. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business, Consumer, Insurance & Em-*

*ployment,* PJC 110.21 (2006) (Question and Instruction on Monetary Loss Caused by Negligent Misrepresentation).

■ Houston Windcrest argues Washington Mutual waived its complaint about the sufficiency of the evidence by failing to object to the jury charge. Houston Windcrest contends that our opinions in *Carlisle Corp. v. Medical City Dallas, Ltd.,* 196 S.W.3d 855 (Tex.App.-Dallas 2006), *rev'd in part,* 251 S.W.3d 55 (Tex.2008)[1], and *Mowery v. Fantastic Homes, Inc.,* 568 S.W.2d 171 (Tex.App.-Dallas 1989, no writ), require us to review Washington Mutual's issue as a complaint that an improper measure of damages was submitted to the jury, not a complaint as to the sufficiency of the evidence. In *Carlisle Corp.,* the plaintiff brought suit on a written warranty which included express terms regarding the damages recoverable for breach. Because the defendant did not object to the jury question allowing recovery of a different measure of damages than that provided in the warranty, we concluded the complaint was waived. *Carlisle Corp.,* 196 S.W.3d at 866. Similarly, in *Mowery,* the appellant argued the charge included an incorrect measure of damages by asking the jury to determine the value of a home at the time of trial instead of the time of sale. *Mowery,* 568 S.W.2d at 172–73. Because no objection was made to the incorrect measure of damages at trial, we concluded the error was not preserved. *Mowery,* 568 S.W.2d at 173.

Here, however, the correct measure of damages, "[t]he economic loss, if any, otherwise suffered in the past as a consequence of Houston Windcrest Road I, L.P.'s reliance on the misrepresentation," was submitted to the jury. In addition, even if the jury was instructed to apply an incorrect measure of damages, absent objection to the charge, we may review the sufficiency of the evidence in light of the charge given. *See Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1985) (question for court of appeals is whether there is some evidence to support jury's answer in light of instruction as submitted, where no objection to charge and no issue raised concerning it).

We review the record for evidence of Houston Windcrest's pecuniary or economic loss. The basis of Houston Windcrest's claim is that Washington Mutual negligently represented the loan could be paid off for $5.4 million. Washington Mutual later demanded almost $6 million to pay off the loan, due to the addition of a prepayment penalty of $622,799.37 that the bank did not include in its original payoff statement. Houston Windcrest contends the addition of the prepayment penalty made refinancing impossible. Houston Windcrest argues it made three types of payments in reliance on the bank's statement that the loan could be paid off for $5.4 million. First, it continued to make mortgage payments to the bank. Houston Windcrest contends it would have defaulted on the mortgage had it known the payoff was over $600,000 more than originally represented by the bank. Second, it paid off a second lien on the property for $830,500. Houston Windcrest contends it was not making payments on that loan and would have continued paying nothing on it, as there was no benefit to paying off the loan if the property was not to be refinanced. Third, Houston Windcrest contends it spent money to make repairs and pay vendors to service the property.

There is no evidence in the record specifying either the amounts paid on the

1. In its opinion, the supreme court addressed only whether a party who prevails in a breach of express warranty action is entitled to attorney's fees.

Washington Mutual mortgage or the amounts paid to make repairs and service the property. Houston Windcrest offered proof of its damages in its exhibit 16, which showed a total of $1,522,771.78 in "deficit funding" for the property from August 23, 2004, through December 1, 2005. Witness Kent Mehring testified exhibit 16 is "a schedule of funding advances from the investment limited partner to Windcrest West Road for deficit funding," prepared by MMA Financial, the limited partner and 99 percent owner of Houston Windcrest. Exhibit 16 shows the amount paid on the second lien, which we discuss below. The remainder of the amounts listed in exhibit 16 are identified as "Funding aged payable—Deficit Funding." Mehring described this category as including amounts for upkeep and repair of the property as well as "debt service" payments, which he explained meant payments on the mortgage to Washington Mutual. The nine amounts listed as deficit funding total $692,271.78. When asked for detail about the totals, Mehring explained:

A: The aged payable means vendor payments, invoices that vendors submitted to the property that hadn't been paid. Deficit funding merely means the property was unable to pay those, so we had to.

They are supported by the operating statements of the property. You would have an aged payables report. You have your profit and loss or income statements showing what your expenses are. So those dollars are primarily—those numbers are primarily taken from a review of the aged payables report from the property, and we would identify vendors that needed to be paid.

Q. Okay. But for those of us in the courtroom looking at this exhibit, we can't tell looking on there what these payments were for.

A. Right.

Q. Other than for the home loan pay-off; is that right?

A. Well, they were for expenses at the property, aged payables.

Q. But we don't know which expenses, correct?

A. That's correct.

Houston Windcrest offered no other evidence of amounts it spent in reliance on the bank's misrepresentation. While exhibit 4 shows an itemization of $176,662.56 in payables due relating to the property as of June 30, 2004, Houston Windcrest did not offer any evidence to show whether or not these payables were included in the total in exhibit 16. Similarly, Houston Windcrest offered exhibit 6, an estimate of $433,990 of "immediate probable costs" of repairs to be made on the property. Houston Windcrest admitted exhibit 6 was an estimate, not actual amounts expended on the property, although Mehring testified "substantially all" of the repairs proposed on exhibit 6 were performed. There are no invoices or other evidence describing these repairs or reflecting their actual cost. Houston Windcrest also admitted some of the items on exhibit 6 were safety-related items, which would have been undertaken for the safety of the tenants in the building regardless of any representation by Washington Mutual. Although Mehring was asked to identify a few of the safety-related items, Houston Windcrest did not provide a total or make any subtraction from the $1.5 million it requested through exhibit 16.

There is no evidence of the amount Houston Windcrest paid to Washington Mutual during this time period as debt service on the mortgage. Houston Windcrest witness Robert Turner testified only that under the refinancing that was planned, Houston Windcrest would save

approximately $10,000 per month in mortgage payments. In addition to the amount in exhibit 16, Mehring testified an additional $213,000 in "deficit funding" had been paid since the ending date of exhibit 16, including approximately $100,000 to have the property painted. No other evidence was offered to support this number. Further, it is undisputed Houston Windcrest did not pay the prepayment penalty of $622,799.37 to Washington Mutual.

Regarding the second lien, exhibit 16 shows a payment of $830,500.00, identified as "Home Loan Payoff." Houston Windcrest's exhibit 17 shows that this amount was paid in settlement of a lawsuit brought by Harris County against Houston Windcrest for default on a loan in the amount of $1,111,638.00, to resolve "a dispute over the reimbursement of monies received by Windcrest as a subrecipient under the Home Investment Partnership Program administered by Harris County and funded by the U.S. Department of Housing and Urban Development." Turner testified the loan was of a special type made to promote affordable housing construction: "[i]f the property didn't make a lot of money in a given quarter or a year, then a substantial if not all of the payments that would be due on the second loan were not necessary to be paid." Turner testified there was "no additional value" for paying off the loan unless the first lien was refinanced.

Although neither the trial judge nor the parties could determine exactly how the jury calculated the amount of damages it awarded, they agreed at the hearing on the motion for judgment that the jury's award could have included the $1,522,771.78 in "deficit funding" from exhibit 16, plus the additional $213,000 in deficit funding, $210,000 for 21 months of savings on the refinanced mortgage payments, and the $622,799.37 prepayment penalty. Although the total of these amounts do not exactly equal the jury's verdict, the jury's award is in a similar range. The parties also appear to agree, as a legal matter, that Houston Windcrest is not entitled to benefit of the bargain damages for a claim of negligent misrepresentation. *See Sloane*, 825 S.W.2d at 442 (quoting RESTATEMENT (SECOND) OF TORTS § 552B(2), "the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant"); *see also D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663 (Tex.1998) (economic injury independent of contract damages required to recover on negligent misrepresentation claim). The parties further acknowledge that the savings on the mortgage payments and the prepayment penalty would constitute benefit of the bargain damages, and the trial judge subtracted these amounts from the jury's verdict in order to reach the amount he awarded in the final judgment. Houston Windcrest, however, contends it is entitled to these damages in any event because Washington Mutual did not object to the charge's damages instruction or request any type of limiting instruction on the measure or type of damages to be recovered.

■ We first address Windcrest's cross-point. The jury charge correctly asked the jury to determine the amount of economic loss suffered by Houston Windcrest. Even without an instruction limiting the measure or type of damages, the jury's answer to the question must be supported by evidence. *See Texarkana Mem'l Hosp. v. Murdock*, 946 S.W.2d 836, 841 (Tex.1997) ("it is axiomatic that a jury must have an evidentiary foundation on which to base its findings"). There is no evidence Houston Windcrest suffered a loss of $2,561,927.78, nor is this amount within the range of evidence presented at

trial. *Cf. Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex.2002) (in determining damages, jury has discretion to award damages within range of evidence presented at trial). Although the parties speculated the jury's award included the prepayment penalty, Houston Windcrest did not offer evidence it had paid the penalty or suffered a loss in the range of the penalty, and did not request damages in the amount of the penalty from the jury. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 73 (Tex.2000) (jury may award more damages than requested by a party if evidence supports higher award, but jury must find amount that would fairly and reasonably compensate plaintiff for loss). Thus, the evidence as a whole does not rise to a level that would enable reasonable and fair-minded people to differ in their conclusions, and the trial judge did not err in not entering judgment for the amount of damages awarded by the jury. *See City of Keller*, 168 S.W.3d at 822. We overrule Houston Windcrest's cross-point.

■ We do agree the trial judge incorrectly reduced the jury's award of damages from $2,561,927.78 to $1,735,771.78, but not for the reasons Houston Windcrest asserts. Essentially, the trial judge determined that while there was some evidence to support the jury's answer, the great weight and preponderance of the evidence supported a different answer. A trial judge does not have authority to substitute his finding for that of the jury, or disregard a jury's answer because it is against the great weight and preponderance of the evidence. *See Alm v. Aluminum Co. of Am.*, 717 S.W.2d 588, 594 (Tex.1986) (trial court may not disregard jury's answer because it is against great weight and preponderance of evidence); *Highlands Ins. Co. v. Baugh*, 605 S.W.2d 314, 319 (Tex. Civ.App.-Eastland 1980, no writ) (trial court has no authority to substitute its

finding for that of jury). Instead of entering judgment, the trial judge should have either suggested a remittitur or granted a new trial. *See Alm*, 717 S.W.2d at 594 (trial court may only grant new trial where evidence factually insufficient); *Galveston County Fair & Rodeo, Inc. v. Glover*, 880 S.W.2d 112, 122 (Tex.App.-Texarkana 1994), *writ denied per curiam*, 940 S.W.2d 585 (Tex.1996) (trial court may only suggest, not compel, remittitur). However, neither party brought this error to the trial judge's attention, and neither party raises it on appeal, so the issue is not preserved for our review. *See* Tex.R.App. P. 33.1 (to preserve complaint for appeal, error must be brought to trial judge's attention and ruling must be obtained).

■ We next consider Washington Mutual's challenge to the sufficiency of the evidence to support the trial judge's award of $1,735,771.78. There was evidence that both before and after Washington Mutual's representation, the property was financially distressed, and the rents received from the tenants were not sufficient to pay the debt service and expenses relating to the property. But there is no evidence the deficit funding made as a result of this financial distress was either a pecuniary loss to Houston Windcrest or was caused by Washington Mutual's representation. *See Texarkana Mem'l Hosp.*, 946 S.W.2d at 838 (to recover damages, burden on plaintiff to produce evidence from which jury may reasonably infer that damages claimed resulted from defendant's conduct). The jury was instructed a proper legal definition would be given for terms used in a sense that varied from the meaning commonly understood. Without a legal definition, the jury could apply the commonly understood meaning of "economic loss," that Houston Windcrest lost money or had less money after Washington Mutual's misrepresentation than before. *See* Webster's Third New Interna-

TIONAL DICTIONARY 1338 (1981) (definitions of "loss" include "an amount that is lost," a "decrease in amount," or the "harm . . . resulting from losing . . . something"). But Houston Windcrest did not establish it suffered a pecuniary loss. *See also Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.,* 960 S.W.2d 41, 49–50 (Tex.1998) (out-of-pocket measure only compensates for actual injuries party sustains through parting with something, not loss of profits on bid not made and profit never realized).

Houston Windcrest contends it would have chosen to default on the loans and considered bankruptcy if it had known the true payoff amount. But the actions Houston Windcrest did take, by continuing its contractual obligations under the Washington Mutual mortgage, and by settling a lawsuit by Harris County regarding the second loan, reduced the amount owed on the property. Houston Windcrest would not suffer pecuniary loss by increasing its equity in the property. Houston Windcrest points to Turner's testimony that paying off the second lien would not necessarily increase the equity in the property, as that would depend on the property's ultimate sale price, but this argument demonstrates the lack of evidence of either loss or gain. Further, Houston Windcrest's witnesses admitted the income tax credits to its investors were still available even though the property was operating at a deficit. As to the payments made to repair, service, and improve the property, there is no evidence of the actual cost of these payments, no evidence of the portion of the payments that would have been made regardless of the representation, and no evidence of any pecuniary loss suffered by Houston Windcrest by making the payments. While detailed valuation testimony may not be required, there must be evidence of an out-of-pocket loss upon which the jury may determine damages. The court of appeals' opinion in *Sloane,* cited

by Houston Windcrest, provides an example of evidence of pecuniary losses resulting from a negligent misrepresentation. *See Fed. Land Bank Assoc. of Tyler v. Sloane,* 793 S.W.2d 692, 697–98 (Tex.App.-Tyler 1990), *aff'd in part and rev'd in part,* 825 S.W.2d 439 (Tex.1991). There, the plaintiffs offered testimony itemizing their out-of-pocket expenses, including what amounts were paid to specific persons for specific tasks undertaken in reliance on the defendant's misrepresentation. *See Sloane,* 793 S.W.2d at 697–98. No such evidence was offered here.

Considering the evidence in the light most favorable to Houston Windcrest, as we are required to do, there is evidence from which a reasonable jury could have concluded Houston Windcrest relied on a misrepresentation by Washington Mutual, and that Houston Windcrest expended sums in payment of two loans and to repair the property. The evidence as a whole, however, does not rise to a level that would enable reasonable and fair-minded people to differ in their conclusions regarding whether Houston Windcrest suffered economic loss as a result of its reliance on Washington Mutual's representation. *See City of Keller,* 168 S.W.3d at 822. Because there is no evidence Houston Windcrest's reliance on the misrepresentation caused it to suffer economic loss, we reverse the trial court's judgment and render judgment for Washington Mutual. *See Shell Oil Prods. Co. v. Main St. Ventures, L.L.C.,* 90 S.W.3d 375, 384 (Tex. App.-Dallas 2002, pet. dism'd by agr.) (evidence showing amount spent in development costs not evidence of amount lost in reliance on promise; judgment on this element of damage reversed and rendered); TEX.R.APP. P. 43.3 (rendition appropriate unless remand necessary).