

NUMBER 13-07-00557-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

SOUTHWEST GRAIN COMPANY, INC.,                                Appellant,

v.

PILGRIM'S PRIDE S.A. DE C.V.,                                Appellee.

**On appeal from the 370th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Chief Justice Valdez**

This appeal arises out of contracts for the sale of U.S. sorghum transported by railcar to Mexico. After a three-week trial, a jury determined that appellant, Southwest Grain Company, Inc. ("Southwest Grain"), converted ten railcars belonging to appellee, Pilgrim's Pride S.A. de C.V. ("Pilgrim's Pride") and violated the Texas Theft Liability Act ("Act"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 134.001-.005 (Vernon 2005). By five

issues, Southwest Grain argues that: (1) the evidence is insufficient to support the amount of damages awarded; (2) the damages are "grossly excessive"; (3) the trial court erred in calculating the prejudgment interest awarded; (4) the evidence is insufficient to prove that Pilgrim's Pride properly segregated its attorneys' fees; and (5) there is insufficient evidence to prove that the attorneys' fees were reasonable and necessary. We affirm.

## I. BACKGROUND

In 1996, Pilgrim's Pride contracted with Grain Continental S.A. de C.V. ("Grain Continental") which contracted with Southwest Grain for the purchase of sorghum, a grain used for chicken feed.[1] Pilgrim's Pride rented ten railcars from Ferro-Quadrum S.A. de C.V. ("Ferro-Quadrum") to transport the grain from Brownsville, Texas, to Pilgrim's Pride, located in central Mexico.[2] Sometime in late August or early September 1996, Southwest Grain loaded the railcars with grain and moved them to the Brownsville Rio Grande Railroad (the "Railroad") for transport.[3] Concerned about the quality of the grain that Southwest Grain had loaded for transport, representatives of Pilgrim's Pride visited Corpus Christi Grain Exchange's Brownsville lab and tested samples of the grain from the railcars. Pilgrim's Pride refused to pay for the grain after discovering that the sorghum contained unsatisfactory levels of aflatoxin.[4] In turn, Grain Continental refused to pay Southwest Grain.

---

[1] Grain Continental was originally an appellee in this appeal; however, in light of a post-trial settlement, this Court severed the portion of the appeal that pertains to Grain Continental in an order dated June 3, 2010, and assigned to it appellate cause number 13-10-00311-CV. Accordingly, this memorandum opinion analyzes only Southwest Grain's appeal of the trial court's judgment in favor of Pilgrim's Pride.

[2] Ferro-Quadrum is not a party to this appeal.

[3] Brownsville Rio Grande Railroad is not a party to this appeal.

[4] "Aflatoxins are toxic metabolites produced by certain fungi in/on foods and feeds." AFLATOXINS: Occurrence and Health Risks, http://www.ansci.cornell.edu/plants/toxicagents/aflatoxin/aflatoxin.html (last visited June 25, 2010). At trial, testimony revealed that high levels of aflatoxin are lethal to chickens and lower levels may cause illness and decrease hatchability.

On October 21, 1996, Grain Continental canceled its contract with Southwest Grain and sued Southwest Grain and Corpus Christi Grain Exchange, claiming that either the aflatoxin sampling and testing was faulty or that the aflatoxin certificates were falsified.[5] Southwest Grain counterclaimed against Grain Continental for breach of contract. Southwest Grain later sued Pilgrim's Pride for tortious interference with Southwest Grain's contract with Grain Continental. Pilgrim's Pride counterclaimed against Southwest Grain for fraud, conversion of the railcars, and for violating the Act. *See id.*

Trial commenced on February 20, 2007. After a three-week trial, the jury found against Southwest Grain on its tortious interference claims against Pilgrim's Pride and found against Pilgrim's Pride on its fraud claim against Southwest Grain. However, the jury found that Southwest Grain converted Pilgrim's Pride's railcars and violated the Act.[6] The jury awarded Pilgrim's Pride: (1) $613,000 for damages relating to the railcars; and (2) attorneys' fees in the amount of $475,000 for preparation and trial, $50,000 for an unsuccessful appeal to this Court, and $75,000 for an unsuccessful appeal to the Supreme Court of Texas. On June 13, 2007, the trial court signed a final judgment ordering that Pilgrim's Pride recover from Southwest Grain the aforementioned amounts plus pre-judgment interest on the $613,000 at a rate of 8.25% per annum. This appeal ensued.

## II. DAMAGES

By its first, second, and third issues, Southwest Grain contends that the damages awarded for unlawful appropriation of the railcars under the Act cannot be sustained.

### A. Pertinent Facts

---

[5] Corpus Christi Grain Exchange is not a party to this appeal.

[6] The jury found Southwest Grain liable to Pilgrim's Pride under two separate theories—one of conversion and one of civil theft under the Texas Theft Liability Act ("Act"). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.001-.004 (Vernon 2005). Pilgrim's Pride elected to recover damages for civil theft under the Act.

3

At trial, Pilgrim's Pride presented evidence that, in 1995, it entered into a contract to lease railcars from Ferro-Quadrum at a rate of $450 per railcar per month. The lease included ten railcars used to transport grain provided by Southwest Grain from Brownsville to Mexico. In 1996, Pilgrim's Pride contended that grain provided by Southwest Grain contained unsatisfactory levels of aflatoxin and refused to pay for ten railcars full of grain that had recently been loaded by Southwest Grain and moved to the Railroad. Pilgrim's Pride's refusal to pay for the grain that had been loaded onto its leased railcars resulted in the railcars remaining at the Railroad.[7]

Stephen Lucas, Pilgrim's Prides's railcar damages expert, opined that Pilgrim's Pride sustained at least $612,000 in damages. A report prepared by Lucas and entered into evidence stated that, from the 1996 inception of the dispute until November 2000, Pilgrim's Pride paid $269,963.50 in lease payments and incidental expenses related to the ten railcars.

In November 2000, Pilgrim's Pride purchased the ten railcars from Ferro-Quadrum for $86,250. Lucas's report opined:

> The decision to purchase the [rail]cars in November 2000 . . . was a prudent decision on the part of [Pilgrim's Pride]. After having made lease payments for over four years, but having no way of using the [rail]cars, [Pilgrim's Pride] was faced with the prospect of making lease payments for the [rail]cars until the conclusion of the present lawsuit. By purchasing the [rail]cars at the equivalent of seventeen (17) months lease payments, [Pilgrim's Pride] saved an additional fifty-five (55) months of lease payments to the present time.

Lucas also testified that Pilgrim's Pride sustained loss-of-use damages in the amount of $256,500. Lucas's report provided:

Further, even after [Pilgrim's Pride] purchased the ten railcars, because

---

[7] Although the jury heard conflicting evidence concerning whether Southwest Grain subsequently emptied the grain and released control of the railcars back to Pilgrim's Pride, Southwest Grain does not challenge the jury's findings that Southwest Grain converted Pilgrim's Pride's railcars and violated the Act. Accordingly, we consider only whether the damages awarded can be sustained.

4

[Pilgrim's Pride] was deprived of the use of these [rail]cars, they were unable to either carry their own goods or to lease the cars to others at a profit. At the very least, [Pilgrim's Pride] would have been able to lease these [rail]cars to other parties at the rate which they had been leasing them from Ferro-Quadrum. At the lease rate of $450.00 per [rail]car per month, [Pilgrim's Pride] has incurred damages of $256,500.00 through August 2005. Even though [Pilgrim's Pride] is still deprived of the use of these [rail]cars at the time of this writing, due to the increasing age of the railcars and their declining utility, the damages of $256,500.00 would seem to be an accurate reflection of the losses suffered by [Pilgrim's Pride] regardless of the ultimate trial date in this matter.

## B.     Sufficiency of the Evidence Supporting the Damage Award

By its first issue, Southwest Grain contends that the evidence is insufficient to support the amount of damages awarded to Pilgrim's Pride.

The Act provides that a prevailing party may recover actual damages and up to $1,000 of additional damages, as well as court costs and reasonable and necessary attorneys' fees. TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(a)(1), (b). In a single damages question, the jury awarded $613,000 in favor of Pilgrim's Pride after finding that Southwest Grain committed civil theft under the Act.[8] The damages question did not ask the jury to specify the elements included in calculating the total actual damages. Southwest Grain argues that the judgment amount is comprised of three components: (1) "$269,963.30 for five-plus years of monthly rental payments for the railcars from August 1996 through November 2000"; (2) "$86,250 for the purchase price of the railcars when Pilgrim's Pride stopped renting and instead bought them on November 14, 2000"; and (3) "$256,500 as loss-of-use damages representing the railcars' total monthly rental value from the time of their purchase through August 2005 . . . ." However, Southwest Grain did not object to the jury charge or request that the jury distinguish the components of the total

---

[8] Question 24 of the jury charge asked: "What amount of money, if paid now in cash, would reasonably and fairly compensate Pilgrim's Pride S.A. de C.V., for its damages, if any, relating to the railroad cars in question?"

amount awarded. We note that a party waives its right to complain about an improper measure of damages when it fails to timely object. *See Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007). Pilgrim's Pride, viewing Southwest Grain's first issue as a complaint that an improper measure of damages was submitted to the jury, asserts that Southwest Grain waived its complaint by failing to object to the jury charge. *See id.* However, Southwest Grain characterizes its first issue as a complaint to the sufficiency of the evidence rather than a complaint that an improper measure of damages was submitted to the jury. Specifically, Southwest Grain contends that the $86,250 purchase price of the railcars cannot be recovered under the Act; therefore, there is no evidence that Pilgrim's Pride's damages totaled $613,000. Absent an objection to the jury charge, we may review the sufficiency of the evidence in light of the charge given. *Wash. Mut. Bank v. Houston Windcrest West Road I, L.P.*, 262 S.W.3d 856, 859 (Tex. App.–Dallas 2008, pet. denied) (citing *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex. 1985)); *Beaumont v. Basham*, 205 S.W.3d 608, 619 (Tex. App.–Waco 2006, pet. denied).

In the present case, the jury found that Southwest Grain converted the railcars, and Southwest Grain does not contest this finding. Thus, we review the record to determine whether the evidence was sufficient to support Pilgrim's Pride's damage award. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(a)(1). The jury award will be upheld only if damages for the purchase price of the railcars can be recovered under the Act and if there is legally and factually sufficient evidence to support an award of $613,000. *See Beaumont*, 205 S.W.3d at 619.

**1. Standard of Review**

When evaluating a legal sufficiency challenge, we review the evidence in the light

most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *Id.* at 827. The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.*

In a factual sufficiency review, we consider and weigh all of the evidence in a neutral light and conclude that the finding is not supported by sufficient evidence only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Golden Eagle Archery, Inc. v.* Jackson, 116 S.W.3d 757, 775 (Tex. 2003); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

**2. Analysis**

In support of its argument that the purchase price of the railcars cannot be recovered under the Act, Southwest Grain cites to *City of Houston v. Texan Land & Cattle Co.*, 138 S.W.3d 382, 390-91 (Tex. App.–Houston [14th Dist.] 2004, no pet.). In *Texan Land & Cattle Co.*, which involved a condemnation proceeding, the Fourteenth Court of Appeals held that where a defendant's actions result in both a temporary and permanent taking, a plaintiff is entitled to recover loss-of-use damages for the time of the temporary taking as well as the fair market value of the property at the time that the temporary taking becomes permanent. *Id.* at 391. Southwest Grain argues that, because a plaintiff in a condemnation proceeding is not entitled to recover loss-of-use damages after he is awarded the property's full market value, Pilgrim's Pride is not entitled to recover both the purchase price and lost rental income of the railcars.

We find *Texan Land & Cattle Co.* inapposite because the damages available in condemnation proceedings differ from those available under the Act. *Compare* TEX.

7

CONST. art. I, § 17 (providing that aggrieved parties in condemnation proceedings shall receive "adequate compensation" for the temporary or permanent taking of his property) *with* TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(a)(1) (providing that an aggrieved party may recover "actual damages"). Nevertheless, for the sake of completeness, we address Southwest Grain's first issue.

"'Actual damages' under the Act are those recoverable at common law." *See Beaumont*, 205 S.W.3d at 619. Under the common law theory of conversion, damages may include "other losses or expenses necessary to compensate the plaintiff for all the actual losses or injuries sustained, not merely the reasonable market value of the property, as a natural and proximate result of the defendant's wrong." *Soto v. Sea-Road Int'l Inc.*, 942 S.W.2d 67, 74 (Tex. App.–Corpus Christi 1997, writ denied). Lucas testified and provided a report stating that from the 1996 inception of the dispute until November 2000, Pilgrim's Pride paid $269,963.50 in lease payments and incidental expenses related to the ten railcars before purchasing ten railcars in November 2000, for $86,250. Lucas's report provided that, when Pilgrim's Pride's original lease of the ten railcars from Ferro-Quadrum ended in November 2000, Pilgrim's Pride "was faced with the prospect of making lease payments for the [rail]cars until the conclusion of the present lawsuit." The report asserted that Pilgrim's Pride's decision to purchase the railcars was a "prudent" decision that allowed Pilgrim's Pride to avoid making lease payments from November 2000 until the time of trial, and that Pilgrim's Pride sustained loss-of-use damages in the amount of $256,500 from November 2000 through August 2005. Southwest Grain did not present any evidence challenging Lucas's assertions regarding the amount of damages sustained by Pilgrim's Pride.

Lucas's report provided some evidence that Pilgrim's Pride's decision to purchase

the railcars was a "natural and proximate result" of Southwest Grain's violation of the Act. *See City of Keller*, 168 S.W.3d at 827; *Soto*, 942 S.W.2d at 74.  Because the jury found that Southwest Grain converted the railcars, we conclude that the jury's damage award could include the cost of purchasing the railcars as well as the lost rental value.  *See Soto*, 942 S.W.2d at 74.  Further, there is no indication that the damage award was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  *See Cain*, 709 S.W.2d at 176.  Accordingly, we hold that the evidence supporting the jury's damage award of $613,000 is legally and factually sufficient.  Southwest Grain's first issue is overruled.

## B.    Were the Damages Awarded "Grossly Excessive"?

By its second issue, Southwest Grain argues that the jury's award is grossly excessive because, when the $613,000 actual damages are added to the $530,386.90 prejudgment interest awarded on those damages, the total amount recovered is more than thirteen times the railcars' 2000 market value of $86,250.  Southwest Grain contends that "[a]lthough the amount recoverable for loss of use can exceed the value of the property, loss-of-use damages are limited to a small multiple of market value" and cites *Kroger Food Co. v. Singletary*, 438 S.W.2d 621, 630 (Tex. App.–Beaumont 1969, no writ), in support of this contention.  In *Kroger*, the jury found that the defendant converted the plaintiff's personal vehicle and awarded the plaintiff loss-of-use damages for 440 days at $4.00 per day, totaling $1,760.  *Id.* at 629-30.  The court noted that awarding $1,760 loss-of-use damages on a vehicle valued at $175 "is so grossly excessive that it shocks the judicial conscience," and then held that the damages were "manifestly unjust and excessive" because the plaintiff was only able to prove that he was deprived of the use of his car for six months.  *Id.* at 630.

9

We find *Kroger* distinguishable from the present case. Here, Pilgrim's Pride purchased an income-producing asset to avoid making future lease payments and was subsequently deprived of the opportunity to rent the railcars to others for almost five years. In *Kroger*, on the other hand, the owner of a personal-use vehicle was deprived of its use for only six months. Furthermore, in *Kroger*, the court concluded that the jury award was excessive because the plaintiff was not able to prove that he was deprived of the use of the car for the 440 days on which the loss-of-use award was based. *See id.* Here, Southwest Grain does not challenge Pilgrim's Pride's assertion that it was deprived of the use of the railcars for almost ten years. Moreover, we have already determined that the evidence is factually sufficient to support the $613,000 damages awarded to Pilgrim's Pride. Southwest Grain's second issue is overruled.

## C. Prejudgment Interest

By its third issue, Southwest Grain contends that the trial court erred in awarding prejudgment interest on the $613,000 damage award to run from December 13, 1996, through the date of judgment. We review a trial court's award of prejudgment interest under an abuse of discretion standard. *See Morales v. Morales*, 98 S.W.3d 343, 348 (Tex. App.–Corpus Christi 2003, pet. denied). To determine if there was an abuse of discretion, we must decide if the lower court acted arbitrarily, unreasonably, or without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985).

As previously noted, the jury awarded $613,000 in total damages to Pilgrim's Pride without specifying how it arrived at this figure. Southwest Grain contends that "[o]rdering that pre[]judgment interest run on the entire amount [$613,000] from 1996 through 2007 would have been appropriate only if all lost profits had accrued in 1996," and that the trial

court's determination is erroneous because "[t]he effect of . . . [awarding] 10 years' worth of prejudgment interest on the total amount of Pilgrim's Pride's claimed railcar damages was that 10 years' worth of interest was paid on amounts that accrued (1) monthly from August 1996 through November 2000; (2) in a lump sum on November 14, 2000; [and] (3) monthly from December 2000 through August 2005." Southwest Grain requests that we "remand this case to the trial court for a recalculation of prejudgment interest."

The railcar damages question submitted to the jury did not require that the jury specify the components it used in reaching the total damage award, and Southwest Grain did not object. Were we to remand the issue of prejudgment interest, the trial court would be asked to speculate as to the components of the $613,000 and calculate prejudgment interest on each of those components. When a party fails to object, it waives its right to complain about an improper measure of damages; thus, the damages are measured by the question and instruction given. *See Equistar Chems., L.P.*, 240 S.W.3d at 868. Southwest Grain failed to object to the railcar damages question and waived its right to complain about the measure of damages submitted to the jury. *See id.* Consequently, Southwest Grain has waived its right to complain that prejudgment interest should have been calculated separately for each measure of damages. *See id.* Southwest Grain's third issue is overruled.

### III. ATTORNEYS' FEES

By its fourth and fifth issues, Southwest Grain contends that the jury's award of attorneys' fees to Pilgrim's Pride was improper.

### A. Pertinent Facts

Pilgrim's Pride asserted fraud and conspiracy claims against Southwest Grain for damage to Pilgrim's Pride's chickens from excessive levels of aflatoxin in grain provided

11

by Southwest Grain. It also asserted claims of civil theft under the Act and conversion related to the issue of whether Southwest Grain unlawfully detained Pilgrim's Pride's railcars for approximately ten years. Pilgrim's Pride also defended against Southwest Grain's tortious interference claim. Pilgrim's Pride only prevailed on its claims relating to the railcars and sought attorneys' fees under the Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 134.005(b) (providing that "[e]ach person who prevails in a suit under this chapter shall be awarded court costs and reasonable and necessary attorneys' fees").

## B.    Segregation of Attorneys' Fees

By its fourth issue, Southwest Grain argues that the evidence is legally and factually insufficient to support the award of attorneys' fees. Specifically, Southwest Grain contends that the attorneys' fees incurred by Pilgrim's Pride in pursuing and defending against claims related to the excessive levels of aflatoxin were not properly segregated from those incurred pursuing its claims related to the issue of whether Southwest Grain unlawfully converted Pilgrim's Pride's railcars.

During trial, Pilgrim's Pride's attorneys' fees witness, David Calvillo, stated without objection that he had "gone ahead and gone through that exercise of doing [segregation] for purposes of this testimony." Calvillo then offered testimony regarding how he calculated the attorneys' fees and opined that Pilgrim's Pride incurred $425,000 in reasonable and necessary attorneys' fees in prosecuting its claim under the Act.[9] Later, the jury was charged on the issue of attorneys' fees as follows: "What is a reasonable fee for the necessary services of Pilgrim's Pride S.A. de C.V. attorneys in this case, state in dollars and cents?"

---

[9] Southwest Grain does not challenge the award of conditional attorneys' fees for an appeal to this Court or to the Texas Supreme Court.

12

Southwest Grain did not object either when evidence supporting the attorneys' fees sustained by Pilgrim's Pride was introduced into evidence or to the jury charge. If "no objection is made to the failure to segregate attorneys' fees, either at the time evidence of attorneys' fees is presented or at the time of the charge, the error is waived." *Holmes v. Concord Homes, Ltd.*, 115 S.W.3d 310, 313 (Tex. App.–Texarkana 2003, no pet.) (citing TEX. R. CIV. P. 274; *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997); *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988); *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 705-06 (Tex. App.–Dallas 2008, no pet.); *Lesikar v. Rappeport*, 33 S.W.3d 282, 317 (Tex. App.–Texarkana 2000, pet. denied)); *Norrell v. Aransas County Navigation Dist. No. 1*, 1 S.W.3d 296, 303-04 (Tex. App.–Corpus Christi 1999, no pet.). Without citation to authority, Southwest Grain asserts that "this preservation rule does not apply because Pilgrim's [Pride] never (clearly) took the position that it was entitled to unsegregated fees." Because Southwest Grain has failed to cite any authority to support its proposition and because we find none, we cannot conclude that Southwest Grain was absolved from its responsibility of objecting if it believed that Pilgrim's Pride's expert failed to properly segregate Pilgrim's Pride's attorneys' fees. Thus, Southwest Grain failed to preserve the issue of segregation on appeal. *See Solis*, 951 S.W.2d at 389; *Dieterich*, 270 S.W.3d at 705-06; *Norrell*, 1 S.W.3d at 303-04. Southwest Grain's fourth issue is overruled.

## C.    Reasonable and Necessary Attorneys' Fees

In its fifth issue, Southwest Grain asserts that the evidence is legally and factually insufficient to support the amount of attorney's fees awarded because the number of hours expended and the amount of fees awarded are excessive. We analyze this issue under the standards of legal and factual sufficiency as set forth earlier in section II.

"As a general rule, the party seeking to recover attorney's fees carries the burden of proof." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). A determination of reasonable attorneys' fees is a question for the trier of fact. *Id.* at 12. Factors that a fact finder should consider when determining the reasonableness of a fee include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). Evidence of each of the *Andersen* factors is not required to support an award of attorneys' fees, and an attorneys' fees expert "may testify that he reviewed an attorney's file and offer an opinion that the fees charged for that work were reasonable and necessary." *Dietrich*, 270 S.W.3d at 706.

Calvillo testified that Pilgrim's Pride incurred $425,000 in reasonable and necessary attorneys' fees in prosecuting its claim under the Act. Calvillo estimated that 2,500 hours were spent on the Act claim at an average rate of $175 per hour. Calvillo calculated the amount of hours expended on the Act claim by reviewing the work conducted by three law firms that had represented Pilgrim's Pride during the course of litigation. Calvillo asserted that 2,500 hours were expended on prosecuting the Act claim by: (1) taking depositions; (2) propounding interrogatories; (3) reviewing applicable documents; (4) researching

14

applicable case law, statutes, and Southwest Grain's defenses; (5) filing and responding to numerous motions; and (6) traveling to South Texas several times over the course of five years to argue "various motions that were filed that were related to the legal issues involved in the railcar case." Additionally, Calvillo stated that the rate charged in the South Texas area for the type of work performed by Pilgrim's Pride's attorneys is between $125 to $450 per hour. Calvillo determined that $175 per hour was the average rate of Pilgrim's Pride's attorneys who worked on this case.

Southwest Grain did not object to the attorney's fees evidence offered by Calvillo or offer any controverting testimony about Pilgrim's Pride's attorneys' fees. However, an expert witness who testified regarding Southwest Grain's attorneys' fees testified that Southwest Grain's attorneys spent a total of 2,520 hours of the entire case and that 85% of that time pertained to claims other than those concerning the railcars.

The jury is the sole judge of witnesses' credibility, and it may choose to believe one witness over another; a reviewing court may not impose its own opinion to the contrary. *City of Keller*, 168 S.W.3d at 819. Because it is the jury's province to resolve conflicting evidence, to the extent the evidence of hours expended by Southwest Grain's attorneys conflicts with the evidence of hours expended by Pilgrim's Pride's attorneys, we must assume that the jurors resolved all conflicts in accordance with their verdict, and we must defer to the jury's resolution of the conflict. *Id.* at 819-20.

Considering all of the evidence in a light most favorable to the verdict and indulging every reasonable inference from that evidence in support of the verdict, we conclude that legally sufficient evidence exists to uphold the award of attorneys' fees. *See id.* at 827; *Dieterich*, 270 S.W.3d at 706. Furthermore, in reviewing the evidence in a neutral light, we cannot conclude that the jury's attorneys' fees award was so contrary to the overwhelming

15

weight of the evidence as to be clearly wrong or unjust. *See Cain*, 709 S.W.2d at 176; *Dieterich*, 270 S.W.3d at 706. Accordingly, Southwest Grain's fifth issue is overruled.

## IV. Conclusion

Having overruled all of Southwest Grain's issues on appeal, we affirm the judgment of the trial court.

ROGELIO VALDEZ
Chief Justice

Delivered and filed the
28th day of June, 2010.

16