**Opinion filed December 16, 2021**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00038-CV

_____

## IN RE COMMITMENT OF BILLY RAY WHITE

**On Appeal from the 91st District Court**
**Eastland County, Texas**
**Trial Court Cause No. CV1945228**

## M E M O R A N D U M   O P I N I O N

This appeal stems from a civil commitment order. Appellant, Billy Ray White, was three times previously convicted of sexually violent crimes against female children ages four through nine. The State filed a civil petition to commit Appellant for involuntary treatment and supervision as a sexually violent predator. A jury found beyond a reasonable doubt that Appellant is a sexually violent predator, and Appellant was civilly committed, in accordance with the Texas Health and Safety Code, for treatment and supervision. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 841.001–.153 (West Supp. 2021). Appellant challenges the trial court's

commitment order in three issues. The first two issues challenge the legal and factual sufficiency of the evidence to support the "sexually violent predator" element of the State's case. In his third issue, Appellant asserts that the trial court abused its discretion in overruling his objection to the prosecutor's closing argument asking the jury to consider the case from an improper viewpoint. We affirm.

*Background*

Appellant has three prior convictions for sexually violent offenses.[1] Regarding his conviction for sexual assault of a female child, an offense under Section 22.011 of the Texas Penal Code, there were at least five instances of sexual abuse that involved Appellant touching the five- or six-year-old child and her touching him. Although Appellant completed a ten-year term of probation, he later reoffended. Appellant's second and third convictions were both offenses of indecency with a child by contact—an offense under Section 21.11(a)(1) of the Texas Penal Code. The two child victims were between the ages of four and nine and were Appellant's grandnieces. The abuse continued for approximately a two-year period with each girl. Appellant was sentenced to seventeen years of confinement in the Institutional Division of the Texas Department of Criminal Justice for each offense, with the sentences to run concurrently.

Before Appellant's release, the State filed a Petition for Civil Commitment and Request for Disclosure. The petition alleged that Appellant is a sexually violent predator and should be committed for treatment and supervision pursuant to Title 11, Chapter 841 of the Texas Health and Safety Code. A jury trial followed, during which only two witnesses testified: Dr. Jason Dunham and Appellant.

---

[1]Under Section 841.002(8)(A) of the Texas Health and Safety Code, a "sexually violent offense" includes offenses under Sections 21.02, 21.11(a)(1), 22.011, and 22.021 of the Texas Penal Code. This is not an exhaustive list of all offenses enumerated in Section 841.002(8) but is inclusive of any of Appellant's prior offenses.

*Expert Testimony*

Dr. Dunham holds a doctorate degree in counseling psychology and he completed a postdoctoral fellowship in forensic psychology in 2002. His practice focuses on forensic psychology, and he has worked in private practice evaluating sex offenders and providing expert testimony in trial settings since 2003. After detailing his training and experience, Dr. Dunham explained that he had become involved with Appellant's case after being retained by the State to evaluate Appellant's risk for committing a sex offense in the future. Dr. Dunham reviewed records, documents, and paperwork prior to meeting Appellant, and he completed a face-to-face interview and testing of Appellant. Following his evaluation of this data, Dr. Dunham stated that it was his opinion that Appellant suffers from a behavioral abnormality that makes him likely to engage in predatory acts of sexual violence.

In the sex offender risk assessment, Appellant's diagnosis of pedophilia falls into the broad category of sexual deviancy. Appellant admitted that this is a problem that he has had most of his life. Dr. Dunham testified that although Appellant has indicated that he would like help with his problem, he also continues to have sexual fantasies about little girls and his previous victims. Appellant's lower level of intellectual functioning, coupled with a lack of treatment, makes it harder for him to resist such impulses and to know how to control this behavior if he is ever tempted in the future. It was Dr. Dunham's opinion that, because Appellant has not been around any young girls during his incarceration, Appellant does not understand that he continues to have these feelings for young girls. He has not had any therapy that decreases the risk of continued offending.

During his interview with Appellant, Dr. Dunham said Appellant described the sexual assault offense from 1986 "almost as if she asked him to do [the sexual acts] with her." Dr. Dunham believed that this was Appellant's interpretation—that

there was an invitation from the victim. In addition to Appellant's misinterpretation of child-victim interactions, Dr. Dunham was also concerned by several other factors: the large age gap between Appellant and the child, the occurrence of the acts in Appellant's parents' home with them present, the planning demonstrated by arranging for the girl to stay the night, and the attempted penetration of her sexual organ with his sexual organ. Because the offense occurred at his parents' home with the likelihood of detection indicates a lack of impulse control. An additional risk factor was that this victim was not related to Appellant. Those who offend outside the family are at higher risk for repeat offenses.

Dr. Dunham found similar instances of misinterpretation or misperception of events with respect to Appellant's second and third offenses. Appellant told Dr. Dunham that the younger girl, while in diapers, touched him intimately. Dr. Dunham expressed a concern that Appellant appears to have interpreted such an accidental action by a toddler as being sexual in nature. This type of misinterpretation is relevant to behavioral abnormalities because it relates to his lower level of functioning, inability to control his urges, and how he will interpret similar situations in the future. Dr. Dunham was concerned that Appellant's misperception and inability to see the world as it is "could easily happen again." His lack of understanding would make it hard for him to correct his behavior.

Additionally, although Dr. Dunham acknowledged that it was good that Appellant was so forthcoming in his interview, he observed two additional risk factors associated with these latter offenses: an established pattern of sexually abusing young girls and a broadened pool of potential victims that includes those related to Appellant. The recidivism was particularly concerning to Dr. Dunham, as it indicated that despite having experienced past legal consequences for his conduct, future legal sanctions were not a deterrent to Appellant. Further, the court-mandated sex offender treatment program that he had participated in while on probation for

the first offense did not help. There was also evidence of "grooming" all three female victims by offering money, food, or privileges to each of them when he would see them. Finally, when Appellant was arrested for the latter offenses, he was found to be working at a Boy Scout camp in Kansas. This was significant to Dr. Dunham, not because Appellant had shown any interest in young boys, but because Appellant felt it was a good idea to work with children and because he had indicated that he wanted to work at the Girl Scout camp but had not been allowed to do so.

Appellant self-reported, at least three separate times, that he had offended against *another* female child, but that his offense against the fourth female child was never reported to law enforcement. Based on Appellant's self-report, he attempted to touch the sexual organ of the daughter of Appellant's then girlfriend, but the female child refused to allow him to do so and told her mother of the attempt. Dr. Dunham believed that Appellant was telling the truth in self-reporting the incident and testified that the incident constituted further evidence of Appellant's risky behavior.

Appellant also shared with Dr. Dunham that there was a fifth female child whom he had been aroused by, but with whom he had taken no action. However, Dr. Dunham noted that, because Appellant had never been left alone with the child, Appellant's failure to act did not indicate any restraint or ability to control his urges. According to Dr. Dunham, Appellant is a sexual deviant, and what arouses Appellant—young girls—has been firmly established and will not change. He has an emotional identification with children more than adults and that means that he is going to continue to be attracted to children. He continues to masturbate to thoughts regarding his older sister, who is deceased. Pedophilic disorder is a lifelong disorder.

Dr. Dunham administered two tests in the evaluation of Appellant: the Static-99R and the PCL-R. The Static-99R considers prior charges and convictions; the number of prior sentencing dates; current age of the person; prior romantic

relationships; any history of noncontact sex offenses; and characteristics of the victim, such as whether the victim was related or unrelated to the person, whether the victim was a stranger, whether the victim was male or female. Dr. Dunham described the Static-99R, which is limited in terms of the number of risk factors that are considered, as merely a part of his comprehensive evaluation.

Appellant scored a zero on the Static-99R test, indicating that, compared to other sex offenders, he has a below average risk for being reconvicted of a sex offense in the future. Dr. Dunham explained that this test underestimates Appellant's risk because it does not measure *dynamic* factors. Further, it focuses on antisocial elements that Appellant does not have. Importantly, Appellant's score was reduced due to his age. However, despite his age (sixty-six years old), Appellant continued to exhibit sexual deviancy by masturbating to thoughts of his victims, and as Dr. Dunham pointed out, Appellant had already reoffended.

The other evaluation that Dr. Dunham completed was the PCL-R, which is a psychopathy checklist. This tool is also used to measure a person's antisocial orientation. Appellant scored an eleven on the checklist, which is in the low range of psychopathy. Dr. Dunham testified that it is not unusual for a person who is diagnosed with pedophilic disorder to have a low score on the PCL-R. Appellant's age was a protective factor because, statistically, people begin to show decline in recidivism in their early 60s. Despite that general population statistic, Dr. Dunham stated that Appellant was continuing to fantasize about young girls.

Appellant's institutional adjustment was positive: he did not have a lengthy disciplinary record and was well-adjusted to life in prison. But pedophiles, more often than not, are model inmates that do not get in trouble. Despite this adjustment, Dr. Dunham discussed his concerns about the lack of support that Appellant would have upon his release from prison, as well as the lack of a plan following his release. Without a release plan, Appellant would not have anyone to help him in his ongoing

challenges or to provide any type of check or supervision. In the doctor's expert opinion, Appellant has a behavior abnormality that makes him likely to engage again in a predatory act of sexual violence.

*Appellant's Testimony*

Appellant's testimony addressed prior offenses, his background, as well as his plans—should he be released. Appellant began attending the Abilene State School in high school and was sexually abused during this time. Following his time at school, Appellant worked as a dishwasher at a truck stop. He did not use drugs and rarely consumed alcohol. Appellant expressed regret for his actions, but when asked why he offended against each of the three female victims, Appellant responded, "I don't know. I wish I knew." Appellant also testified that he no longer enjoyed spending time with children and that he did not "need [any] more trouble." Appellant explained that, at the time of trial, he was in a sex offender treatment program, but he was not able to provide the jury information about how he would refrain from reoffending in the future, other than to "stay away from them." The State asked Appellant if he thought he was "safe to be around little girls," and Appellant responded that he was not.

*Verdict at Trial and Issues on Appeal*

After the parties rested and closed, the trial court granted a partial directed verdict that Appellant is a repeat sexually violent offender, as defined under Section 841.003(b), which Appellant does not contest here. Thereafter, the jury unanimously found, beyond a reasonable doubt, that Appellant is a sexually violent predator. The trial court subsequently entered a final judgment and an Order of Commitment.

Appellant now raises three issues: (1) that the evidence is not legally sufficient to support a finding that Appellant is a sexually violent predator beyond a reasonable doubt, (2) that the evidence is not factually sufficient to support a finding that

Appellant is a sexually violent predator beyond a reasonable doubt, and (3) that the trial court abused its discretion in overruling Appellant's objection to the State's closing argument that urged the jury to consider the case "from an improper viewpoint," and not as a neutral factfinder.

*Issue One: The Evidence is Legally Sufficient*

In Appellant's first issue, he argues that Dr. Dunham provided misleading, conclusory, and speculative statements during his testimony and that, without those statements, no rational factfinder could have found, beyond a reasonable doubt, the elements required for a civil commitment under Section 841.003.

*Standard of Review*

The "legal-sufficiency standard in criminal cases is consistent with the civil standard [in sexually violent predator appeals]: the reviewing court must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements [required for commitment] beyond a reasonable doubt.'" *In re Commitment of Stoddard*, 619 S.W.3d 665, 675 (Tex. 2020) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see also In re Commitment of Stuteville*, 463 S.W3d 543, 551 (Tex. App.— Houston [1st Dist.] 2015), pet. denied). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See Stoddard*, 619 S.W.3d at 674. The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Stoddard*, 619 S.W.3d at 674; *Stuteville*, 463 S.W.3d at 551. If the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Stoddard*, 619 S.W.3d at 674.

*Analysis*

In a sexually violent predator case, the State must prove beyond a reasonable doubt that a person is a sexually violent predator. HEALTH & SAFETY § 841.062(a); *see also Stuteville*, 463 S.W.3d at 552. A person is a sexually violent predator if the person "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." HEALTH & SAFETY § 841.003(a). Under Chapter 841, one way that a person is determined to be a repeat sexually violent offender is "if the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses." *Id.* § 841.003(b).

"Behavioral abnormality" is defined by the Texas Health and Safety Code as a "congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id.* § 841.002(2). "Whether a person suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence is a single, unified issue." *In re Commitment of Harris*, 541 S.W.3d 322, 328 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (citing *In re Commitment of Bohannan*, 388 S.W.3d 296, 303 (Tex. 2012)). The supreme court in *Bohannan* explained that the behavioral abnormality definition might be more clearly stated as "a congenital or acquired predisposition, due to one's emotional or volitional capacity, to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Bohannan*, 388 S.W.3d at 303.

The trial court granted a partial directed verdict and determined that Appellant is a repeat sexually violent offender because he had been convicted of more than one offense and a sentence was imposed for at least one of these offenses. The trial court's charge reflected this finding. The jury was required to answer the question

regarding whether Appellant is a sexually violent predator; however, to answer that question in the affirmative the jury had to determine if Appellant suffered a behavioral abnormality that would make him likely to engage in a predatory act of sexual violence. Under the statute, the jury must make this determination beyond a reasonable doubt. *Id.* § 841.062(a). Appellant attacks the finding of a behavioral abnormality based on the contention that Dr. Dunham's opinion lacks scientific credibility that would allow a reasonable jury to find Appellant to be a sexually violent predator.

Regarding the likelihood of Appellant to reoffend due to a behavioral abnormality, testimony was presented to the jury that Appellant suffers from pedophilia—a congenital or acquired condition. The record also includes testimony about Appellant's history of sexual offenses against at least three different female children and how those offenses, and the timing of them, factored into Dr. Dunham's evaluation of Appellant. Dr. Dunham testified that Appellant had misinterpreted children's innocent acts in the past as an invitation to offend and opined that Appellant's prior recidivism makes it likely that he will offend again. Further, Dr. Dunham also evaluated Appellant's self-report for a sexual offense he was never tried for—also against a child. Appellant continues to fantasize about female children, including past victims. He lacks impulse control as demonstrated by engaging in offenses in situations with a high risk of detection and, unfortunately, has not been deterred by previous criminal prosecution. The jury heard Appellant himself admit that he did not "think that [he was] safe to be around little girls."

In light of the record before us, we hold that the evidence is legally sufficient to support the jury's finding that Appellant suffers from a behavior abnormality that makes him likely to engage in a predatory act of sexual violence. Accordingly, we overrule Appellant's first issue.

*Issue Two: The Evidence is Factually Sufficient*

In Appellant's second issue, he argues that the evidence is not factually sufficient to support the jury's verdict because he is not a member of a "small group of extremely dangerous sex offenders that require civil commitment." Appellant relies heavily on the court of appeals decision in *Stoddard*, which was later reversed by the Texas Supreme Court.[2]

*Standard of Review*

The standard of review for factual sufficiency differs from the evaluation for legal sufficiency of evidence. A "factual-sufficiency review is premised on consideration of the entire record." *Stoddard*, 619 S.W.3d at 674 (citing *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018)). As in a legal sufficiency analysis, there is still an assumption that the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so. *Id.* But disputed evidence that a reasonable factfinder could *not* have credited in favor of the finding is treated differently in a factual sufficiency analysis. *Id.* at 676. "[I]n an SVP[3] case where the burden of proof is beyond a reasonable doubt, the evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the SVP finding, along with the undisputed facts that do not support the finding, is so significant that the factfinder could not have found beyond a reasonable doubt that the statutory elements were met." *Id.* at 674−75. A reviewing court's mere disagreement with the jury "as to proper weight and credibility cannot be the basis of a reversal on factual-insufficiency grounds." *Id.* at 677.

---

[2]Both Appellant's and Appellee's briefs were submitted to the 11th Court of Appeals before the Texas Supreme Court issued the decision in *Stoddard*.

[3]Sexually Violent Predator.

*Analysis*

The only disputed evidence to which Appellant directs us on this issue are the results of the Static-99R and PCL-R evaluations completed by Dr. Dunham. Appellant's trial counsel questioned Dr. Dunham during cross-examination about Appellant's score of zero on the Static-99R, which indicated that a score of zero carried a two to three percent recidivism rate. The Static-99R evaluation is limited in terms of the number of risk factors that are considered, and it was merely a part of Dr. Dunham's comprehensive evaluation. Further, Static-99R focuses on antisocial elements that Appellant does not have. Dr. Dunham testified that Appellant's low score was not indicative of Appellant's risk because he had already reoffended following a legal sanction of probation.

Additional information raised by Appellant's trial counsel included Appellant's lack of substance abuse history and disciplinary history while in prison. But because these facts are not disputed, and are actually consistent with a pedophile, there is no need for us to consider whether the jury resolved them in favor of one side or the other, nor to determine whether they completely outweigh the remainder of the testimony offered by Dr. Dunham and Appellant. At most, we could consider whether the low score on the Static-99R is weighty enough to overcome the remainder of the testimony and evidence. However, considering Appellant's multiple offenses, particularly reoffending following legal sanction, and Appellant's continued fantasies about the children that he violated, the dispute about the interpretation of the Static-99R is not so significant that the jury could not have found beyond a reasonable doubt that the statutory elements were met.

Appellant additionally argues that it has not been demonstrated that he falls in the "small but extremely dangerous group of sexually violent predators" mentioned in the legislative findings section of Chapter 841. HEALTH & SAFETY § 841.001. In *Stoddard*, the Texas Supreme Court addressed this legislative finding and held that

12

the "small but extremely dangerous group" language "is not part of the statute's definition of 'sexually violent predator' and was not an element the jury was required to find." *Stoddard*, 619 S.W.3d at 677; *see also Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 762 (Tex. 2003) ("The starting point [in conducting a factual-sufficiency review] generally is the charge and instructions to the jury."). Following *Stoddard*, Appellant's argument that more weight should be given to legislative findings than to the text of the Act itself is not persuasive.

We hold that the evidence is factually sufficient to support the jury's verdict. In light of the entire record, the jury could have determined, beyond a reasonable doubt, that Appellant has a behavioral abnormality as required by Chapter 841 and is a sexually violent predator. Accordingly, we overrule Appellant's second issue.

*Issue Three: The Closing Argument Was Not Improper*

In Appellant's third issue he contends that the trial court abused its discretion in allowing counsel for the State to urge the jury to consider the case from an improper viewpoint, rather than as a neutral factfinder.

*Standard of Review*

During closing argument, attorneys may argue the facts of the case to the jury; draw legitimate inferences, deductions, and conclusions from the evidence; discuss the reasonableness of the evidence and its probative effect; and reply to the argument of the opposing party. *Zurita v. Lombana*, 322 S.W.3d 463, 482–83 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *see also* TEX. R. CIV. P. 269(b), (e). "[A]ppeals to the jury to place themselves in the shoes of a litigant generally are improper." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 708 (Tex. App.—Dallas 2008, no pet.). Asking jurors to consider a case from the viewpoint of one of the parties essentially asks them to depart from their neutral factfinder role and is improper. *See id.*

13

To obtain a new trial because of an improper jury argument, a party must prove (1) the argument was improper; (2) the argument was not invited or provoked; (3) the trial court made an adverse ruling on an objection, requested instruction, or motion for mistrial; (4) the improper argument was not curable; (5) the argument by its nature, degree, and extent constituted reversible error; and (6) the argument had a probable effect on a material finding. *In re Commitment of Summers*, No. 01-19-00738-CV, 2021 WL 3776751, at *14 (Tex. App.—Houston [1st Dist.] Aug. 26, 2021, no pet.) (mem. op.) (citing *Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex. 1979)).  "Reversal is proper only upon a showing that the probability that the improper argument caused harm is greater than the probability that the verdict was grounded on the proper proceedings and evidence." *Id.* (citing *Standard Fire Ins.*, 584 S.W.2d at 840).

*Analysis*

In the State's closing argument, the prosecutor posed a hypothetical situation to the jury:

> I want to ask you, if you saw [Appellant] in an apartment with little girls, would you think that these little girls are safe?

Appellant objected to the argument on the grounds that the statement was "improper," and the trial court overruled the objection.  The State continued, ending its closing argument with:

> And if you know the answer to that question, ladies and gentlemen, you know the answer to this question -- Do you find beyond a reasonable doubt that [Appellant] is a sexually violent predator -- is yes.

Appellant argues the prosecutor's statement was improper because it asked the jury to consider the case from an improper viewpoint rather than as a neutral factfinder.  Appellant claims the statement required the jurors to imagine a

14

hypothetical situation that is not the criterion for a behavioral abnormality because there are "a great many candidates" who might not be the best persons to watch young girls—including drug users, irresponsible people, and those with Alzheimer's.

While that may be true, we disagree with Appellant's argument, as the question posed from the prosecutor is similar to the one posed in *Summers*. *See Summers*, 2021 WL 3776751, at *15 ("How many little girls have to pay the price until somebody does something to take responsibility for Mr. Summers?"). The court in *Summers* held that the prosecutor had not asked the jurors to step into the shoes of one of the parties but, rather, had merely "asked the jurors to consider the safety and well-being of other similarly aged girls if Summers were released from prison." *Id.* In Appellant's case, the prosecutor similarly did not ask the jury to put themselves into the shoes of a party but instead asked the jury to consider whether other young girls might be at risk. The prosecutor's argument was not improper. Accordingly, we overrule Appellant's third issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS
JUSTICE

December 16, 2021

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.